FROUG, SMULIAN & Co. *v*. OUTCAULT ADVERTISING COMPANY.

Opinion delivered July 6, 1914.

1. PRINCIPAL AND AGENT—UNAUTHORIZED ACT—SCOPE OF AUTHORITY—RATIFICATION.—A principal is not bound by the unauthorized act of his agent, where the agent acts outside the apparent scope of his authority; but he may ratify the agents' unauthorized act, and when he does so, he becomes as completely bound as if he had conferred upon the agent the authority to do the act in question.

2.  PRINCIPAL AND AGENT—RATIFICATION.—The agent of appellant entered into a contract with appellee without authority to do so. Appellant, with knowledge of the existence of a contract, but without knowledge of its full terms, accepted some of the benefits of the contract. Appellant *held* to have ratified the whole contract.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

### STATEMENT BY THE COURT.

This was a suit by appellee against appellants on a written contract, dated September 9, 1909, for certain advertising cuts sold and delivered to them. Appellee relied upon its written contract for the sale of said cuts, which was signed by appellants "per Gavin," who was appellant's advertisement writer, but who had no authority to execute the contract, according to the evidence offered on behalf of appellants, and they further say the contract was never ratified by them.

The cause was tried by the court sitting as a jury and was heard upon substantially the following evidence:

A. Froug testified that he was a member of the defendant company, and that he did not make the contract, and the advertising man who made it had no authority to make it, and that he was unaware that it had been made until statements of the account were received, at which time Gavin advised him that appellee would furnish cuts for advertising for four weeks each month, but that they were to pay only for the cuts which were used, and that as the statements of account came in from plaintiff he would ask Gavin which cuts had been used and these had been paid for. Witness did not know whether the cuts were received at one time or at different times, but he received a statement each month from plaintiff, which statements included all the cuts furnished to the time of the rendition of the statement, and several remittances were made covering the cuts which had been used. Witness did not know there was a written contract until plaintiffs requested payment of the balance due, payment of which was refused, and a tender made of the cuts

which had not been used. Appellant's stenographer and bookkeeper also testified and substantially corroborated Mr. Froug.

It is not denied that appellants would be liable for the amount for which judgment was rendered, if the contract sued on was a valid and enforceable agreement, but appellant says they were not bound by the terms of this contract, because their employee who executed it had no authority so to do, and the contract was never ratified by appellants. Witness Froug admits the use of cuts after being advised of the existence of the contract, but it is insisted that there was no ratification, because Froug was misinformed as to its terms. Gavin was not in the employment of appellant at the time of the trial and did not testify.

The court found the facts to be, that Gavin had no authority to execute the contract, but appellants had knowledge that some of the cuts had been received and used in their business, and did not demand of or call upon appellee for a copy of the contract under which the cuts were sold and delivered, and that by their continued use of the cuts, and by their failure to disaffirm or deny the authority of their agent, they in effect ratified the contract made by him.

Under this finding of fact the court rendered judgment for the balance due upon the contract, and this appeal is prosecuted from that judgment.

*Jos. Loeb,* for appellants.

1. One who deals with an agent is bound to ascertain the nature and extent of his authority. A special agent must act within the scope of his powers. 55 Ark. 627; 92 *Id.* 315; 105 *Id.* 111; 81 *Id.* 202; 62 *Id.* 40.

2. Ratification of unauthorized acts of an agent, to be binding on the principal, must have been made with full knowledge of all the material facts in the case; ignorance of such facts render the alleged ratification invalid. 76 Ark. 563; 64 *Id.* 217; 11 *Id.* 189; 90 *Id.* 104.

*Carmichael, Brooks, Powers & Rector,* for appellee.

1. Appellant knew the cuts were being used, and having availed itself of the unauthorized purchase, there was a sufficient ratification to bind it upon the contract. 55 Ark. 240; 66 *Id.* 209; 31 Cyc., pp. 1257-8-9 and 60; 13 *Id.* 1257; 54 Ark. 240; 28 *Id.* 59.

2. There was no tender of the cuts, nor offer to return. 90 Ark. 530.

*Jos. Loeb,* in reply.

The question of tender was not raised below.

SMITH, J., (after stating the facts). (1-2) The principal, of course, is not bound by the unauthorized act of his agent, who acts without the apparent scope of his authority. But he may ratify his agent's unauthorized act, and, when he does so, he becomes as completely bound as if he had conferred upon his agent the authority to do the act in question. This is an elementary principle of the law of agency and requires no citation of authority to sustain it. Ordinarily, the principal is not held to have ratified the acts of his agent, if he is ignorant of his agent's action, but such lack of knowledge can not always afford immunity from liability, and does not do so at all, if with knowledge that an unauthorized contract has been made in his name, but without information as to its details, he permits its performance and enjoys its benefits. In 31 Cyc., p. 1257, it is said: "The lack of full knowledge (of all the facts), however, does not protect a principal who deliberately chooses to act without such knowledge, as where, knowing that he is ignorant of some of the facts, he has such confidence in his agent that he is willing to assume the risk and to ratify the act without making inquiry for further information than he at the time possesses, or where he deliberately ratifies without full knowledge, under circumstances which are sufficient to put a reasonable man upon inquiry." And again on the same page it was said: "Although a principal has an election either to repudiate or to ratify an unauthorized act of an agent, on his behalf, he can not

ratify in part or repudiate in part, but must either repudiate or ratify the whole transaction. He can not ratify the part which is beneficial to himself and reject the remainder; with the benefits, he must take the burdens. Thus, a principal can not ratify a contract made for him by an agent without also ratifying and becoming bound by the terms and conditions, although unauthorized, upon which it was made. * * *

"Accordingly, a ratification with full knowledge of part of a transaction in general operates as a ratification of the whole."

Appellants knew a contract had been entered into in their name and was being performed by appellee. A letter was introduced in evidence addressed by appellee to appellants, thanking them for their patronage, and this letter was notice that some kind of an order or contract had been made in their behalf, and that the cuts were being delivered in accordance therewith.

Upon being advised their employee had executed a contract in their name, without authority, appellants had the right to repudiate it; but they could not ratify it in part and repudiate it in part. *Daniels* v. *Brodie,* 54 Ark. 220.

Good faith required appellants to ascertain the terms of this contract, if they did not intend to repudiate it. A copy of it appears to have been left with appellants, but became misplaced, and another copy was promptly furnished upon a request therefor. Appellants say Gavin misinformed them as to the terms of the contract. Even if this be true, appellee was in no wise responsible for that fact. Gavin was never its agent and never undertook to act for it, but he became the instrumentality or agency by which appellant undertook to ascertain the extent to which he had contracted for them, and, under the circumstances, appellants must sustain the loss resulting from Gavin's deception or error. *Dierks Lumber Co.* v. *Coffman,* 96 Ark. 505.

Finding no error in the judgment, the same is affirmed.

PHILLIPS *v.* COLVIN.

Opinion delivered July 6, 1914.

HOMESTEAD—PURCHASE MONEY—EXECUTION.—C. purchased land from
    B., giving B. notes for the purchase price and moving upon the
    land and claiming it as his homestead. C. then borrowed from P.
    money with which he paid off B., giving P. notes for the amount
    borrowed. P. recovered judgment against C. on his notes and
    sought to levy execution on the homestead on the ground that the
    money borrowed from him was used in the purchase of the same.
    *Held*, the homestead was exempt from execution, the debt from
    C. to P. being merely a debt for borrowed money.

Appeal from Columbia Circuit Court; *W. E. Patter-
son*, Judge; affirmed.

STATEMENT BY THE COURT.

B. S. Phillips obtained judgment against J. C. Col-
vin in the circuit court in an action on debt for the sum
of $253.18. Subsequently, an execution was issued upon
the judgment and levied upon forty-seven acres of land
belonging to Colvin. The latter, after giving due notice
of his intention to do so, filed his schedule claiming said
land as his homestead, thereby being exempt from exe-
cution. Upon the hearing, the circuit court sustained the
schedule and issued a supersedeas. Subsequently, Phil-
lips filed a motion in the circuit court to quash the super-
sedeas on the ground that the judgment upon which the
execution was issued was for money loaned by Phillips
to Colvin for the express purpose of paying the purchase
price of the land levied upon, and that on that account
the land was not exempt from execution as his home-
stead.

Colvin filed a plea of *res judicata,* in which he stated
that Phillips had instituted an action against him in the
chancery court to recover an amount of money which he
alleged that he had loaned Colvin for the purpose of pay-
ing the balance of the purchase money due on his home-
stead, and in his complaint asked that he be given a lien
on the land comprising the homestead of Colvin for the
amount sued for.

The court sustained a demurrer to the complaint, and dismissed it for want of equity. No appeal was taken from the decree rendered. The present case was submitted to the circuit court on an agreed statement of facts, as follows:

The defendant, J. C. Colvin, purchased from H. A. Bryant forty-seven acres of land situated in Columbia County, Arkansas, and Bryant executed to him a warranty deed therefor. The consideration recited in the deed was two hundred dollars, evidenced by two notes for one hundred dollars each, due and payable some time thereafter, with interest at the rate of 10 per cent per annum. Colvin was unable to pay the purchase money when the notes became due, and he and Bryant and the plaintiff met together and Phillips loaned to Colvin the sum of $213 for the purpose of paying the purchase price of the land. Colvin at the same time paid the money to Bryant and executed to Phillips his note for $213, bearing interest at the rate of 10 per cent per annum. At the same time the note from Colvin to Bryant was destroyed. Colvin lived upon the land at the time he borrowed the money from Phillips and claimed it as his homestead.

The court overruled the motion of Phillips to quash the supersedeas, and from the judgment rendered Phillips has appealed.

*W. H. Askew,* for appellant.

1. Money borrowed of a third person for the purpose of purchasing a homestead and used for that purpose, is purchase money within the exception to article 9, section 3, Constitution. 66 Ark. 442-444, and cases cited; 10 Cal. 385, 70 Am. Dec. 740, 741; 99 Am. Dec. 571; 12 Kan. 570; 18 Kan. 521; 87 Am. Dec. 254; 39 Ga. 466; 13 Tex. 333; 46 Ga. 204; 53 Wis. 574-581.

2. The plea of *res judicata* can avail nothing in this case, unless the question raised in this case was raised or could have been raised in the former case tried in the equity court. The question in this case was raised for

the first time on the motion to quash the supersedeas. 76 Ark. 391; 62 Ark. 398; 36 Ark. 336, 343, 344.

*Stevens & Stevens,* for appellee.

The debt for which judgment was obtained was for money loaned, and not purchase money; hence, there could be no lien against the homestead. 72 Ark. 433. Authorities cited by appellant are not contrary to appellee's contention, but rather support it.

Hart, J., (after stating the facts). Counsel for the plaintiff Phillips in his brief says that the sole question raised by this appeal is whether or not money loaned by a third person to the purchaser for the purpose of paying off the balance due on the purchase price of his homestead and used for that purpose is "purchase money" to such an extent as to come within the exception of section 3, article 9, of our Constitution? The section of the Constitution in question provides that "the homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment or decree of any court or to sale under execution or other process thereon except such as may be rendered for the purchase money or for specific lien."

In the case of *Acruman* v. *Barnes,* 66 Ark. 442, Barnes borrowed from Acruman one thousand dollars for the purpose of purchasing a homestead and used it for that purpose, and the court held that money borrowed for the purpose of buying a home and so used is "purchase money" within the exception to article 9, section 3, of our Constitution.

In the present case, the facts are essentially different. Colvin executed his notes to Bryant for the purchase money of the land which subsequently became his homestead. When the notes became due he was unable to pay them, and borrowed the money from Phillips for that purpose. This was a debt for borrowed money, loaned, it is true, to pay for the land, but it is still a debt for borrowed money. The money was loaned by Phillips to Colvin to pay a pre-existing debt created for

the purpose of purchasing a homestead, and it was therefore a general loan. Phillips was not a party to the original transaction. This is the distinction made in the following cases: *Magee* v. *Magee,* 51 Ill. 500, 99 Am. Dec. 571; *Carey* v. *Boyle,* 53 Wis. 574; *Austin* v. *Underwood,* 37 Ill. 438, 87 Am. Dec. 254; *Eyster* v. *Hatheway,* 50 Ill. 521.

In the latter case, the court said:

Dec. 740, 10 Cal. 385, cited in their brief. Even, if this were a suit in equity and they made this contention, they could not successfully maintain it for the reason that it was within the issue involved in the chancery court instituted by the plaintiff against the defendant to have a lien declared on the land in question for the money loaned the defendant by the plaintiff. No appeal was taken from the judgment in that case, and, the plea of *res adjudicata* of the defendant would be a bar to the right of the plaintiff for subrogation.