PHARR *v.* SOUTH ARKANSAS OIL & GAS COMPANY.

Opinion delivered March 20, 1922.

1. MINES AND MINERALS—FRAUD IN PROCURING LEASE.—Where, in obtaining an oil and gas lease, a promoter of a corporation subsequently organized represented to plaintiffs, lessors, that the plan was to obtain leases of 40,000 acres of land in a block, and to assign one-half to the corporation and other half to oil men to induce them to drill test wells, and that stock in the corporation would be issued to lessors for leases, the fact that he obtained leases for 30,000 acres in excess of the acreage mentioned, on the same basis, was not a fraud on plaintiffs, entitling them to a cancellation, where there was no agreement that leases in excess of the quantity named should not be taken by the corporation, stock in which was issued to plaintiffs in lieu of rentals, and no showing that acceptance thereof was an unprofitable or undesirable venture, or that it would not be a benefit to all stockholders if the venture was a success.

2. PRINCIPAL AND AGENT—RATIFICATION OF UNAUTHORIZED ACT.—where the lessor in a gas and oil lease accepted and retained stock in the lessee company when he knew or could have known that the stock was intended to be in payment of rentals under the

lease, he was not entitled to a cancellation of the lease on the ground that a receipt for the stock was signed by his son without authority.

3. MINES AND MINERALS—CANCELLATION OF LEASE.—Where, in obtaining an oil and gas lease, a promoter of a corporation subsequently organized represented to plaintiffs, lessors, that the plan was to obtain leases of lands in a block and assign one-half to the corporation and the other half to oil men to induce them to drill test wells, and that stock in the corporation would be issued to lessors in lieu of rentals, the fact that such promoter and his associates withheld leases rightfully belonging to the corporation in accordance with the plan of the stockholders on its organization would not entitle plaintiffs to cancel the lease and withdraw from the corporation, as the corporation and its stockholders have an appropriate remedy to compel the assignment of the leases to the corporation.

Appeal · from Columbia Chancery Court, *J. Y. Stevens,* Chancellor; affirmed.

*Will Steel,* for appellants.

1.  The rule relied on by appellees, to the effect that parol evidence cannot be admitted to enlarge the consideration for the purpose of cancelling the lease, does not apply where fraud enters into the consideration. 71 Ark. 496; 125 *Id.* 441; 141 *Id.* 99. It may be admitted that where the allegations of fraud pertain to a promise rather than to an existing fact, it is not actionable; but where the promise is made to deceive and with no intention to perform, that affords an exception to the rule. 144 Ark. 429; 113 *Id.* 517. Wingfield occupied a position of trust and confidence. *Webb* v. *Shea,* 148 Ark. 406; 12 R. C. L. 311, par. 72. This court has made no distinction between fraudulent representations and fraudulent concealment where one is under a legal duty to disclose the fact. 131 Ark. 382; 103 *Id.* 497.

Appellant is not compelled to rely on parol testimony only, to show that the stock was given as a part consideration for executing the lease. Written evidence of that fact appears by exhibit B to the testimony of Bonnie Davis, being a certified copy of an additional statement made by Wingfield, attached to an application to the State Bank Commissioner to sell stock in the company.

2. The original receipt was not filed as part of any pleading, neither was it referred to in any original pleading; but, if it had been so filed, it would serve only as *prima facie* evidence of its genuineness, and the other party could contest its genuineness without first filing an affidavit denying it. 82 Ark. 105; 121 *Id.* 328.

There is no evidence that the defendants parted with the stock under the belief that it was given for rentals and renewals. Pharr was ignorant of that contention until suit was brought. How could he be estopped? 10 R. C. L. 694, 695. Appellees admit that they told Pharr that the stock was given him for the lease. If they misrepresented the facts, they cannot take advantage of their own fraud. 12 R. C. L. 395. Mere silence will not estop a party unless the other party is misled to his disadvantage. 100 Ark. 399.

*Mehaffy, Donham & Mehaffy,* for appellees.

1. The promises made by Wingfield were promises to be performed in the future, and were not such as could be the basis for an action of fraud. 145 Ark. 311. Yet they were fulfilled, as appears by the testimony of appellant himself. Since his promises were fulfilled, what difference to appellant could it make, that Wingfield and his associates secured other acreage?

2. It is not a question of whether appellant signed the receipt or not. He accepted the stock and retained it nearly two years, without question or inquiry as to the purpose for which it was given.

McCULLOCH, C. J.    This is an action instituted by appellants in the chancery court of Columbia County to cancel a gas and oil lease executed by them covering 236 acres of land in that county. Appellants owned the described tracts of land, and on April 10, 1919, executed to the Columbia County Development Company (a co-partnership) a lease of the oil and gas rights on that land. The lease recited a cash consideration of one dollar paid, and stipulated that, if drilling operations should not be commenced within one year from date of lease,

lessees would pay a quarterly rental of twenty-five cents per acre for three years, otherwise there should be a forfeiture of the lease.

A corporation was formed, entitled South Arkansas Oil & Gas Company, said corporation being one of the defendants and appellees in this case, and this lease, with leases obtained from other landowners in the vicinity, was assigned to that corporation. Stock in the corporation of the par value of $236 was issued and delivered to appellants. This stock was issued to appellants in satisfaction and in lieu of the rentals specified in the lease. Stock was similarly issued and delivered to other lessors in amounts equal to one dollar per acre for the respective quantities of land leased. Receipts were taken from each of the lessors to whom the stock was delivered, reciting the consideration for which the stock was delivered. The name of O. D. Pharr, one of the appellants, was signed to a receipt by his son, but in this action he repudiates the authority of his son to sign his name.

The leases were obtained by W. D. Wingfield, who was made president of the corporation, when organized.

Appellants allege, as grounds for cancellation, that Wingfield, as an inducement to them to give the lease, falsely and fraudulently represented to them that the plan was to obtain the leases in the names of Wingfield, Moody and Cline; that leases were to be obtained on 40,000 acres of land in a block, and assigned, one-half of same to said corporation (to be organized), and the other one-half to certain oil men from Tulsa, Oklahoma, to induce them to put down test wells on the lands, and that stock in the corporation should be issued to the respective lessors equal in par value to one dollar for each acre of the leased lands in payment for the lease.

It is also alleged in an amendment to the complaint that Wingfield and his associates obtained leases on other lands in excess of the amount of acreage mentioned above and assigned same to the corporation, receiving stock

equal in value to one dollar per acre, and that Wingfield fraudulently concealed from appellants his purpose to do that.

There is also an allegation in the complaint to the effect that Wingfield took the lease in the name of the Columbia County Development Company instead of in the name of himself, Cline and Moody, without the knowledge or consent of appellants, but this fact does not seem important, since the lease was assigned to the corporation as agreed, and that issue seems to have been abandoned.

The answer contains denials of the allegations of fraudulent representations and concealments.

The case was heard on oral and documentary testimony, and there was a decree dismissing the compaint for want of equity.

The alleged fraud concerning the representations or promises as to the plan to obtain leases to the amount of acreage represented and assign them to the corporation and to the Tulsa people is not supported by the evidence, for the leases were obtained and assigned in accordance with the representations, and the Tulsa people put down the test wells. The fact that Wingfield obtained other leases and turned them over to the corporation, receiving in return shares of stock on the basis the same as other lessors, did not constitute fraud on the rights of appellants. There was no agreement, either express or implied, so far as the evidence discloses, that other leases should not be taken by the corporation in excess of the quantity named. There was no restriction as to the quantity of leases to be obtained. Appellants merely say that Wingfield proposed to obtain leases on 40,000 acres. It is not shown that the acceptance of leases by the corporation in excess of the above specified quantity was an unprofitable or undesirable venture, nor is it shown that the acceptance of such additional leases would not inure to the benefit of all stockholders if the venture proved to be a success. We find nothing in this feature of the case which constitutes fraud.

According to the testimony adduced by appellants, the signature of O. D. Pharr to the receipt by his son was not authorized, but he accepted the stock on the terms named and kept it without objection for nearly two years, when he knew, or could have known, that it was issued in satisfaction of rentals under the lease, the same as stock delivered to the other shareholders. The evidence on this issue is sufficient to support the decree.

Affirmed.

### ON REHEARING.

McCULLOCH, C. J., Appellants contend that, according to the evidence, the additional leases obtained by Wingfield were not turned over to the corporation, but that they received the additional stock in the corporation as a bonus for promoting the organization. It is not shown by the evidence with any degree of certainty that the additional leases (30,000 acres) have been withheld from the corporation—at least the intention of Wingfield and his associates to withhold them.

Mr. Bonnie Davis, the only witness who testified on the subject, merely stated his understanding to be that the record disclosed that the Columbia County Development Company was still holding the leases.

The offer to prove the admission of Mr. Harrington, the secretary of the South Arkansas Oil & Gas Company, was properly rejected, for such evidence was not competent. In order to sustain the charge in this respect, appellants should have shown that the additional stock was issued to Wingfield without consideration, and that the additional leases were being withheld from the corporation to deprive the stockholders of the benefits arising from the ownership by the corporation of these leases.

If the leases are wrongfully withheld by the Columbia Development Company (the co-partnership controlled, as alleged, by Wingfield) the corporation itself as well as its stockholders have an appropriate remedy to compel the assignment of those leases to the corporation. But ap-

pellants are not entitled to cancel his lease and withdraw from the corporation merely because Wingfield and his associates are guilty of wrongdoing in withholding leases which should rightfully go to the corporation in accordance with the plan of the stockholders on its organization.

On reconsideration of the evidence, we are of the opinion that our former conclusion on each feature of the case was correct.

Petition denied.