HAL H. PEEL & COMPANY v. HAWKINS.

Opinion delivered December 12, 1927.

1. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY.—One dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent, clothed with authority coextensive with its apparent scope.

2. INSURANCE—CONDITIONAL CONTRACT.—Where, in order to write a life insurance policy, an agent working for a principal, who wrote insurance and made loans, promised the applicant that, if he would give his note and take an insurance policy, the agent's principal would make a loan to him, but the loan was not made as promised, held, in a suit by the principal on such premium note, that the failure to make the loan was a defense to the note, the insurance and loan contract being indivisible.

3. INSURANCE — FRAUDULENT CONTRACT — RATIFICATION. — Whether defendant, in an action on a premium note given for a life insurance policy, ratified the agent's fraudulent acts in inducing the contract by keeping the policy after discovering fraud in the agent's promise to make a loan, if defendant would take a policy, held for the jury.

4. ESTOPPEL—RETENTION OF POLICY.—Defendant, sued on a life insurance premium note, held not estopped as a matter of law to urge fraud as a defense by reason of having retained the policy after discovery thereof, where he tendered the policy within a reasonable time.

Appeal from Poinsett Circuit Court; *G. E. Keck*. Judge; affirmed.

*Cooley, Adams & Fuhr*, for appellant.

*John S. Mosby* and *J. G. Waskom*, for appellee.

McHANEY, J.     This is a suit on a promissory note executed by appellee to the Cotton States Life Insurance Company, on the 5th day of September, 1922, for $176.46, with 8 per cent. interest per annum, which was assigned by the payee to appellant. This note was executed and delivered to appellant under the following conditions: .

Appellant is engaged in the business of soliciting life insurance, with its principal office at Jonesboro, Arkansas, and was at the time the general agent for the Cotton States Life Insurance Company, for whom it had made a few farm loans, and had also made some loans for the Denver Investment Company, but that the loan business was not its main business. Lynn Warren was the agent of appellant, whose authority was limited, according to Mr. Peel, to that of soliciting life insurance only. Warren solicited insurance from appellee for the Cotton States Company. Appellee did not want any life insurance, but wanted a loan of $5,000 on certain land owned by him. Warren advised him that, in order to get the loan, he would have to take out an equal amount of life insurance. He thereupon gave Warren an application for the $5,000 life insurance, and in a few days he returned with the policy, telling appellee that he could pay the premium in the above amount out of the loan when it was received, and pay the balance of his debts out of the amount of the loan. Under this agreement, he executed the note for the premium and turned over his deeds and abstract to Warren, who took them off with him, and, a few days later, appellant sent them back to Mr. Simms, who was the cashier of the Bank of Lepanto, but did not make any loan. Appellee is a man without education, not being able to read or write, and, upon demand being made on him to pay his note, refused, for the reason that the loan he desired had not been granted to him. He did not return the policy to the company, but, immediately upon receipt of his abstract and deeds by the Bank of Lepanto, he went to his attorney, Mr.

Scobey, and told Mr. Scobey to write the company for him, but does not know whether this was done or not. He also told Warren he would give him the policy, or he could come and get it, and Warren said he did not want it; that he offered to go get it, but did not have it in his pocket; that he did not surrender the policy, as no one came to get it, and he thought no more about it.

Appellee kept his abstract and deeds in the safe of Mr. Stuckey, who testified that appellee and Warren came to him about this matter, and that Warren agreed to write the insurance, and get the loan, and, at appellee's request, he got the abstract and deeds to the property, and delivered them to Warren, who said that the premium could be paid out of the loan.

The case was submitted to the jury under instructions from the court, and a verdict and judgment was rendered for appellee, from which is this appeal.

Appellant urgently insists, for a reversal of this case, that Warren had no authority to make the representation that the company would make a loan as an inducement to write the policy of insurance, and that therefore the plaintiff is not bound by such representation. He cites a number of authorities to the general effect that a principal is not bound by the acts of his agent, unless done within the actual or apparent scope of his authority. While this is true, it is equally well settled, as was said in the case of *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, 201 S. W. 508, that: "One dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent clothed with authority co-extensive with its apparent scope." This case was cited with approval in the case of *Arkadelphia Milling Co.* v. *Green,* 142 Ark. 565, 219 S. W. 319, where it was said: "A person dealing with a special agent must do so at his peril, and, if the special agent was without authority, the principal cannot be held. Not so, however, in dealing with a general agent. A person dealing with a general agent can hold the principal if the acts of the agent are within the

general scope of the particular kind of business intrusted to him.'' In that case, one Carr was employed by appellant, and was sent by it to the mill of one Brown semi-monthly for the purpose of checking up the bolts, staves and labor incurred in making them and for paying therefor by drawing checks against appellant to settle the labor accounts, and to pay Brown, or others at Brown's directions, with whom appellant had a contract for the output of the mill. The court held in that case that: ''Carr's employment was not a special one and confined to a single transaction, but was a general employment to transact a particular kind of business for appellant. He was therefore a general agent, under the rule announced in the case of *Liddell* v. *Sahline,* 55 Ark. 627, 17 S. W. 705.'' In this case it is admitted that Warren was appellant's agent for the soliciting of insurance, and it is undisputed that, in soliciting insurance from the appellee, who did not want the insurance, but who did want a loan, he promised to get the loan through appellant's agency, and it is undisputed that appellant did procure farm loans, and that the premium for which the note was given could be paid out of such loan. It was therefore one indivisible contract, the insurance being applied for and taken as a necessary incident to the procuring of the loan. We therefore hold, under the authority of the above-cited case, that, since Warren was admitted to be the agent of appellant, appellee had the right to presume, in the absence of notice to the contrary, that Warren was appellant's general agent, clothed with authority to make a contract with appellee for the loan and the insurance. Furthermore, it is undisputed that the abstract and deeds to the property appellee desired to pledge for a loan were delivered to appellant, and by it returned to the Bank of Lepanto some three or four days after having received same, and it therefore must have known at that time that appellee was desirous of procuring a loan, else he would not have sent in his abstracts and deeds. While it is true that the loan business is not appellant's principal business, it is undis-

puted, in fact testified to by Mr. Peel, that his company had procured farm loans, not only for the Cotton States Company, but for another company, and it cannot therefore be said that it was not engaged in that kind of business.

It is further insisted that there was no surrender of the policy by appellee, and that, having kept same, he is now estopped from setting up the defense of fraud in the procurement of the note sued upon. In other words, it is insisted that, if a party who has been defrauded, after discovering the fraud, ratifies the acts of which he complains, he cannot thereafter rescind the contract. That is undoubtedly true and a correct statement of the law, but we do not think the evidence justifies the assumption that appellee ratified the contract. At least we cannot say that he did as a matter of law. The facts which have heretofore been stated made it a question for the jury, and the court submitted this question to the jury under this instruction: "If you should find that, if the contract is as the defendant claims it to be, but should find that, within a reasonable time, he did not notify them of the rescission of the contract and tender or offer back to them the policy, then your verdict would be for the note for the amount sued for." The jury found for the defendant, and necessarily found that he did tender, or offer back to appellant, the policy within a reasonable time. We think there was substantial evidence upon which to base this instruction, as appellee testified positively that he told Warren that he could have the policy back, or he would go and get it for him, not having it in his pocket at the time, but that Warren told him he did not want it back, that he could do with it what he pleased, or something to that effect, and this was within a few days after the return to him by appellant of his abstract and deeds.

The case was submitted to the jury under correct instructions, and, finding no prejudicial error, the judgment is affirmed.