McMillan v. Marathon Oil Company.

4-3369

Opinion delivered February 19, 1934.

*D. D. Glover*, for appellant.

*Henry E. Spitzberg*, for appellee.

McHANEY, J. Appellant, Mrs. Cora A. McMillan, is the owner of a certain filling station property in the city of Malvern. Prior to October 11, 1932, said property was under lease to the Texas Oil Company at a rental of 1 cent per gallon of gasoline sold in said station per month. Through negotiations between her agent and the agents of appellee, which were initiated by the latter's agents, on October 11, 1932, she executed a lease agreement to the appellee, for a period of twelve months, beginning November 1, 1932, at $90 per month. The lease agreement was prepared by counsel for appellee, who, upon examination of the abstract of title to the property, found that it was mortgaged to the Commonwealth Building & Loan Association of Little Rock in the sum of $7,500. The latter agreed to subordinate its rights to that of appellee, provided the monthly rentals were paid to it, and Mrs. McMillan, on the same day, October 11, executed a written assignment of the rentals to accrue under said lease to said association. Under date of October 14, 1932, she executed a lease upon the same premises for the remainder of the month of October to L. J. Nix, an agent of appellee, at 1 cent per gallon of gas sold during the remainder of the month. This lease agreement, as also the rental assignment aforesaid, made specific reference to the lease agreement with appellee above mentioned. When the Texas company moved its underground tanks and other equipment from the prem-

·ises, it left the openings in the ground unfilled at Nix's request, and he immediately moved tanks and other equipment in, the property of appellee, and replaced the concrete which had been removed when the Texas company took its tanks out. All this was done by Nix, as he says, although he had a lease for only sixteen days. The station was, from October 14 on, operated in appellee's name, displaying its name and brand of products. Appellee never did sign the lease agreement, nor did it pay appellant any rent as agreed or otherwise. On December 17, Nix gave Mrs. McMillan a check for $19.40 for rent for November, the October rent having been paid. She took this check to the Building & Loan Association, and, upon its advice, refused to accept it, and turned it back to Nix. She thereafter brought this action against appellee to recover the rent as stipulated in the lease agreement. At the conclusion of the evidence on behalf of appellant, the court, upon appellee's motion, found the facts and law against her, dismissed the complaint for want of equity, and this appeal followed.

We think the court erred in so deciding. To sustain the action of the trial court, appellee insists that there is no proof that either Mr. Springer, its general manager of sales in this State, or Mr. Sheets, who actively solicited this lease and negotiated with appellant for it, and who was its field agent, had any express authority to represent appellee in this particular matter. There is no showing to the contrary. The undisputed proof is that Sheets solicited this lease, and, when the terms had been agreed upon, he requested Mrs. McMillan's agent to go to see Mr. Springer, general agent for Arkansas, which he did, and he and Springer agreed upon the contract, which was reduced to writing by appellee's attorney. Springer either sent it or caused it to be sent to Mrs. McMillan for her signature. She signed it and at the same time signed the rent assignment heretofore mentioned and Sheets signed as a witness thereto. This rent assignment was sent to the Commonwealth Building & Loan Association and was approved and accepted by it. No further subordination agreement was necessary, but, if so, the association agreed to subordinate its lien to the lease and

offered to sign a proper writing to this effect. Springer, Sheets and Nix were all employees of appellee. They assumed to act for it in the premises, and we think were acting within the apparent scope of their authority. Springer, being the general manager for sales in this State, the others, acting under him, had the apparent authority of transacting any business for his principal that would further or tend to further the business of his principal of which he is the general manager. It is well known that oil companies market their products through filling stations or service stations, either owned by them in fee, or operated by them under a lease, or through dealers handling their brands of merchandise. Such being the case, Springer no doubt had the express authority to negotiate for leases on property for filling station purposes, and bind his principal by contracts of this nature. At least, he had the apparent authority so to do. Moreover, both Sheets and Springer were admitted agents, and we have many times held that one dealing with an admitted agent had the right to presume, in the absence of notice to the contrary, that he is a general agent, clothed with authority coextensive with its apparent scope. *Hal H. Peel Co.* v. *Hawkins,* 175 Ark. 806, 300 S. W. 420, and cases there cited. Also it is true that Springer is the general agent, and we have many time further held that generally the principal is bound by all acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not. *Oil City Iron Works* v. *Bradley,* 171 Ark. 45, 283 S. W. 362; *A. J. Chestnut Co.* v. *Hargrave,* 177 Ark. 683, 7 S. W. (2d) 800.

Appellee's agents caused appellant to terminate a lease agreement between her and the Texas company, made a contract with her for the lease of the property, entered into possession of the property and have had it in their possession ever since. It cannot escape liability now on the supposed lack of authority in such agents to bind it, or in its failure to have its proper officials execute the lease agreement. The term having now expired, it is liable for the full amount of the rental, $1,080, with interest thereon at 6 per cent. for one-half the term, to November 1, 1933, this sum to bear interest

thereafter until paid at 6 per cent. Judgment will be entered here for said amount, and all costs here and below.

Reversed.