SWEARENGEN *v.* COLE.

4-4638

Opinion delivered May 3, 1937.

*Frank C. Douglas, Claude T. Cooper* and *T. J. Crowder,* for appellants.

*Shane & Fendler,* for appellees.

McHANEY, J. Appellees, husband and wife, are, and have been for some years, the owners of the east half of lot 1, block 20, Blytheville, Arkansas, and one Saliba was the owner of the west half of said lot. Many years prior to March, 1932, there had been erected on said lot a one-story brick building extending back 80 feet and divided in the middle by a wood partition, so as to make two store buildings. Later, that part of the building on appellees' property was extended 60 feet back to the alley, with a concrete slab floor. In March, 1932, the building was destroyed by fire and settlement was made with appellees by the insurance companies on the basis of a total loss. The walls were left standing after the fire, but the front was torn down and part of the side wall of the old building was lowered to twelve feet, and the partition wall and roof on the front 80 feet were removed, by order of the city authorities. The

rear 60 feet of the building was left standing as also the roof over it although badly damaged.

Appellant Swearengen was planning to build on a lot owned by him and a contractor suggested that he might buy the salvage material in the burned building. Neither knew who the owner was, but the contractor found that appellees, who live at Conway, Arkansas, were the owners, and on June 22, 1934, Swearengen wrote appellee, W. D. Cole, the following letter: "I would like to know if you care to sell the salvage on the lot corner First and Main here. If interested kindly advise promptly, also your idea of price." Cole replied to this letter, but did not keep a copy, and it was received by Swearengen who destroyed it when he moved his office shortly thereafter. Cole first says the letter told Swearengen that the oil people wanted the material and it was not for sale. On being recalled, he said: "I simply wrote him that the salvage was not for sale, that the oil people that were buying this lot wanted it." On cross-examination, he said he wrote him "that the salvage on the lot was not for sale." Swearengen says Cole wrote him the salvage was not for sale at present as he was on a deal to sell the property, but asked him to get in touch with Burns who was handling the matter. His testimony as to the contents of the letter was corroborated by three others.

Appellant Burns was and is a licensed real estate agent and was employed by Cole to make a sale of his property. He interested the Marathon Oil Company in the purchase of the Cole and Saliba lot for the erection of a filling station. The contemplated sale progressed to the point that deeds were deposited in escrow, title to the lots examined and approved, plans and specifications filed and permit to build the filling station granted. The engineer of the Marathon Oil Company then decided they should have a special permit to construct the particular kind of building they wanted, and after considerable effort on the part of Burns, a special meeting of the city council was held and a special permit granted at the expense of the oil company. There-

upon, representatives of the oil company advised Burns that the money would be paid over in two or three days, and told him to proceed at once to clean off the lot. Cole's price was $4,000 and no reservations were made about the salvage. Burns talked to Swearengen about sale of the material to him and told him in the first conversation that the deal was not closed and that the salvage was not then for sale. After he thought the sale was made to the Marathon Oil Company and its agents had told him to clean the debris off the lot, he again went to him and sold the salvage to him for $125 and it was promptly removed.

Appellees brought this action for damages for conversion of their property. They contended for a value in excess of the salvage value on the ground that the walls in the old building as well as in that part of the extension were of a substantial value for rebuilding purposes, claiming a value of $2,000, and alleging that appellants were trespassers. Issue was joined and a decree was rendered against both appellants for $960.

It is undisputed that Burns was appellees' agent for the sale of the lot at a price of $4,000 which carried with it the material on the lot. It is also undisputed that Burns made a sale to the Marathon Oil Company; that the latter did not want the debris on the lot and instructed him to remove it at once; that the sale, for some reason not disclosed, but through no fault of Burns, failed of consummation; that before being advised of the oil company's failure to perform, Burns sold the salvage to Swearengen for $125 cash and same was removed from the premises.

The contents of the letter from Cole to Swearengen are in dispute, as above set out. We think the preponderance of the evidence shows that Cole told Swearengen that the property was not for sale at present; that he was on a deal to sell the lot and material, but to see Burns who had the sale of all the property in charge. Some time later he talked to Burns who told him the salvage was not for sale as the deal had not been closed. This was in June, 1934. Thereafter, in August, Burns

told him the deal was closed and the salvage was for sale and a purchase was made.

Swearengen was dealing with an admitted agent and it is not suggested that there was any fraud or collusion between them. The buyer thought he had the right to buy and the agent thought he had the right to sell. We have many times held, to quote a syllabus in *McMillan* v. *Marathon Oil Co.,* 188 Ark. 937, 68 S. W. (2d) 473, "One dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent, clothed with authority coextensive with its apparent scope." And again: "Generally a principal is bound by all the acts of a general agent which are within the apparent scope of his authority, whether they have been authorized or not." Here we have an agent of Cole unquestionably authorized to sell the lot with the salvage on it. He makes a sale for the price stipulated, but the purchaser does not want the salvage and gives instructions to clear the lot of the debris at once. Had the sale gone through, no question would ever have arisen about the authority of Burns to sell the salvage. Under these circumstances it seems conclusive that, in dealing with Swearengen, Burns acted, if not with actual authority, within its apparent scope, and that Swearengen cannot be held liable as a trespasser.

As to the liability of Burns, the proof shows that he has never accounted to Cole for any part of the purchase money. Whether he had authority from Cole or not, he could not make a sale of Cole's property and not account for it. While the evidence is in dispute as to the value of the property, we think the great preponderance thereof shows it was sold for all it was worth. If so, then Cole has not been hurt by its sale. Burns acted in good faith in making the sale, thinking he had the right to do so, and having sold the property for all it was worth, should not be penalized because he might have been mistaken as to his actual authority.

The judgment against Swearengen is reversed, and the cause as to him dismissed. As to Burns, judgment

will be entered here against him for $125 with interest from August 22, 1934, at six per cent.