CONRAD MOTTE *vs.* FIRST NATIONAL STORES, INC.

VIRGINIA MOTTE, *p. a. vs.* SAME.

JANUARY 13, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. One of these two actions of trespass on the case for negligence was brought by Virginia Motte, an infant who sued by her father and next friend Conrad Motte, for personal injuries resulting from an accident on October 2, 1942 in the defendant's store in Providence. The other action was brought by her father for consequential damages sustained by him as the result of that accident.

The cases were tried together before a justice of the superior court sitting with a jury and resulted in a verdict of $15,000 for the infant plaintiff, and one of $2,500 for the father. Thereafter the defendant filed a motion for a new trial in each case on the usual grounds and on the further ground that the damages were excessive. Following a hearing on those motions the trial justice granted a new trial in each case unless, within a specified time, all of the verdict in excess of $6,000 was remitted in the infant's case, and all of the verdict in excess of $1,200 was remitted in the case of the father. Such remittiturs were duly filed.

Each case is in this court on defendant's exceptions to certain rulings on evidence, to the denial of its motion for a directed verdict, and to the refusal of the trial justice to

grant an unconditional new trial. Since recovery in both cases depends on defendant's liability for the injuries to the infant plaintiff, we shall, unless otherwise stated, treat the cases as if only that of the child Virginia was before us.

It appears in evidence that the store in question was divided at or about its middle into two sections by turn-stiles, railings and "cash booths." To enter the rear section, where the grocery department was located, a customer had to pass through one of the turnstiles. At the time of the accident a small truck, otherwise known as a "dolly," was standing near the butter counter in the grocery department and close to the turnstile leading into that department. The truck, which was approximately three feet long, one foot wide and stood three or four inches off the floor, was nothing more than a movable platform on four wheels with no sides. The platform itself was not solid, being merely a framework of boards with intervening spaces. The truck was laden with cartons of butter, each weighing from 30 to 35 pounds, piled in two stacks between four and five feet in height.

The only witnesses to the accident who testified were Helen Motte, Virginia's mother, for the plaintiff, and William E. Franklin, who was in charge of the butter counter, for the defendant. Helen Motte testified that in the afternoon of October 2, 1942 she went to defendant's store with Virginia, then three years old, to buy some groceries; that she turned the turnstile leading into the grocery department so that Virginia could pass through ahead of her, which the child did; that Virginia was about an arm's length from her; and that just as she, the mother, was passing through the turnstile, the cartons of butter on the truck "toppled over and knocked her [the child] to the floor, and hit her on the head and body. She was practically buried under the butter."

Defendant's witness William E. Franklin, then seventeen years old, testified that some ten minutes prior to the accident the truck, laden as hereinbefore described, was

brought to the grocery department, for unloading, by a stock boy whom he could not identify and was left near the turnstile in front of the butter counter. His direct testimony was to the effect that Virginia climbed onto the truck and as she reached for the upper cartons of butter one of the stacks fell over and threw her to the floor.

In cross-examination Franklin testified that he did not see the child before the accident; that "I only seen her when the butter had fallen." This aspect of his testimony was shortly thereafter further amplified by the following questions and answers: "Q. Now, did you see the child come up to the butter? A. No, I didn't. Q. The first you saw was when the butter was falling, and the child was falling at the same time, is that right? A. That's right. The way I remember, the child tried to reach up for the butter, and the butter came down. That is all I seen. Q. The child reached up as though to touch the butter, and the butter was falling about that time? A. Yes, sir. Q. You didn't see the child up on top of the dolly [truck]? A. No. I didn't say that." In rebuttal Virginia's mother positively denied that the child either climbed onto the truck or that she attempted in any way to reach for or touch the cartons of butter on the truck.

All the medical evidence, which comprised the testimony of four doctors, a hospital record, and the written diagnosis of a doctor who died before the trial, was produced by the plaintiff and stands uncontradicted. In so far as pertinent that testimony, which was extensive, may be summarized as follows. Doctor John N. Walsh, who attended Virginia immediately after the accident, found that her then main objective evidence of injury was a contusion of the left frontal eminence of the head. During the period that Virginia was under his care she complained of constant headaches and was "fidgety, crying, and running around the office, and acting entirely unlike herself." She was next attended by Dr. John J. Donahue, who confined his practice to children. He testified that he treated the child mainly

for abnormal behavior which manifested itself by violent fits of temper and impulses. Doctor Donahue entered the military service and Virginia was thereafter treated by Dr. Jerome J. McCaffrey, a neurologist, and later by Dr. Edward T. Streker, also a specialist in children's diseases. Doctor Streker's testimony was substantially to the same effect as that of Dr. Donahue.

The hospital record shows that Virginia, at the instance of Dr. McCaffrey, was admitted to a Providence hospital on February 10, 1943 with a tentative diagnosis of "Traumatic Subarachnoid Hemorrhage." Following a lumbar puncture, which showed a bloody spinal fluid, that diagnosis was confirmed and on February 19, 1943 she was discharged as "Improved." Thereafter Dr. McCaffrey continued to treat the child until his death sometime in 1944.

In June 1944 Dr. McCaffrey sent a written report to plaintiff's attorney wherein, among other things, he set forth his findings and diagnosis of the case. Over the defendant's objection only such findings and diagnosis were allowed in evidence under general laws 1938, chapter 538, §6, which provides that the declarations of a deceased person shall not be inadmissible in evidence as hearsay under certain conditions. Defendant's exception to· such ruling was not pressed before us. In that report Dr. McCaffrey wrote in part as follows: "Gradually following her recovery from the Subarachnoid Hemorrhage and from· the Ischio-rectal abscess, Virginia showed some improvement in her conduct and in her hyperactivity, but her behavior is still abnormal in that she cries easily, strikes other children, is restless at night and complains occasionally of headache. The diagnoses in this case are: 1. Contusion of Brain  2. Traumatic Subarachnoid Hemorrhage  3. Personality Disorder *due to Trauma*  4. Ischio-rectal abscess, secondary to intramuscular treatment." (italics ours)

Early in 1946 Dr. Donahue, who had resumed private practice, again treated Virginia for her general health,

but he referred her to Dr. Hugh E. Kiene, a specialist in neurology and psychiatry, for treatment of her abnormal activities. Doctor Kiene testified that the child was suffering from a "reactive behavior disorder," which, as far as we can understand from the record before us, means a neuropsychiatric unbalance marked by abnormal conduct, such as fits of crying and temper accompanied at times with violence. Although considerably improved, Virginia was still under the care of Dr. Donahue and Dr. Kiene at the time of trial. We add here that the evidence is uncontradicted that prior to the accident the child enjoyed good health and showed no symptoms of abnormal behavior.

Under its exception to the denial of the motion for a directed verdict defendant contends: first, that the doctrine of *res ipsa loquitur,* hereinafter generally referred to as the doctrine, is inapplicable in the circumstances of this case; second, that if it does apply, the presumption of negligence that may have arisen under that doctrine was rebutted by "the defendant's credible and uncontradicted evidence"; and, third, that in any event the plaintiff was not entitled to recover because she had failed to plead and prove her lack of knowledge of what caused the accident.

Under its first contention defendant argues that the doctrine is inapplicable in this case because the plaintiff had all the information reasonably accessible to the defendant as to the cause of the accident. If the facts were as assumed in the contention the rule advocated by the defendant might be sound. However, it is well established that such rule will not be applied when (1) the cause or instrumentality of an accident is entirely under the control of the defendant; (2) such an accident does not ordinarily occur after due precautions have been taken; and (3) the plaintiff has no knowledge or means of knowledge of the cause of the accident. Only in such circumstances can a plaintiff invoke the benefit of the doctrine. *Cox* v. *Providence Gas Co.,* 17 R. I. 199; *Parker* v. *Providence & Stonington Steamboat Co.,* 17 R. I. 376; *Ellis* v. *Waldron,* 19 R. I.

369; *Cardin* v. *Lovett,* 52 R. I. 78; *Kilgore* v. *Shepard Co.,* 52 R. I. 151; *Dufresne* v. *Theroux,* 69 R. I. 280, 284. See also *King* v. *Wiesel,* 67 R. I. 182, 188.

In our judgment the doctrine is applicable in the instant case. Here the cartons of butter were unquestionably placed upon the truck by an employee of the defendant and from that time to the happening of the accident the truck and contents were entirely under its control. Furthermore, the falling of the butter as described by the plaintiff, without intervention of an independent act by a third party, ordinarily would not have occurred if due precautions had been taken.

Among the many cases from this and other jurisdictions cited by the defendant in support of its contention, which cases we need not discuss because they are clearly distinguishable from the instant one on various grounds, is *Laforrest* v. *O'Driscoll,* 26 R. I. 547. There plaintiff's intestate, a general laborer for a railroad company who was working near a car loaded with lumber, was fatally injured when the lumber fell from the car while being unloaded by the defendant. Irrespective of anything that the court may have said as to the application of the doctrine in the circumstances under its view of lumber falling *while being unloaded,* three important facts distinguish that case from the one at bar: first, the declaration in the *Laforrest* case specifically alleged that the lumber fell from the car because it was not properly tied or braced; second, the car had not been *loaded* by the defendant; and, third, the lumber fell while force of one kind or another was applied thereto in the process of unloading. All these elements are absent in the instant case. For cases analogous to the present one see *Crawford* v. *American Stores Co.,* 5 N. J. Misc. 413; *Forsch* v. *Liebhardt,* 5 N. J. Super. 75.

Defendant's second contention to the effect that the presumption of negligence raised by the doctrine disappears upon the introduction by the defendant of any credible evidence in rebuttal thereof and that therefore a verdict

should be directed against a plaintiff in such circumstances misconceives the meaning that this court has consistently given to the word "presumption" whenever the doctrine of *res ipsa loquitur* was under consideration. In each instance, whether in express language or by clear implication, that word was held to mean *prima facie* evidence which, when a case is tried upon its merits, casts upon a defendant the burden of rebutting the same to the satisfaction of the trier of the facts. *Cox* v. *Providence Gas Co., supra; Ellis* v. *Waldron, supra; Murray* v. *Pawtuxet Valley St. Ry.*, 25 R. I. 209; *Reynolds* v. *Narragansett Electric Lighting Co.*, 26 R. I. 457; *Fagan* v. *Rhode Island Co.*, 27 R. I. 51, 54; *Wilbur* v. *Rhode Island Co.*, 27 R. I. 205, 207; *Himes* v. *Cole Teaming Co.*, 39 R. I. 504. Considering the clear and substantially uniform expressions of the court in the cited cases as to the nature and effect of the presumption under the doctrine of *res ipsa loquitur*, and the further fact that the rule thereby adopted has been followed without question over the years, it is now too late for the defendant in the instant case to attempt to reopen a matter that heretofore has been repeatedly decided.

Defendant's third contention is that it was entitled to a directed verdict because the plaintiff's declaration failed to allege that she did not know nor had she the means of knowing the cause of the accident. The defendant did not by demurrer or otherwise raise that question before trial but filed a plea of the general issue. Notwithstanding such deficiency of allegations in the declaration it saw fit to go to trial on its plea of the general issue. Except for the fact that the verdict apparently was contrary to defendant's expectations, there is nothing in the record before us showing that it was in any way prejudiced by the defect in pleading about which it now attempts to complain. Since we find no merit in any of the contentions above discussed, the exception under consideration is overruled.

The next exception pressed by the defendant is to the ruling of the trial justice permitting Dr. Hugh E. Kiene to

base his opinion in part on a history furnished him by the plaintiff's mother. We recall that at the time the doctor testified he had been treating Virginia for a considerable period. It is therefore evident that during that time he acquired considerable personal knowledge of the child's untoward behavior proclivities. Whatever history he may have received from Virginia's mother was in the circumstances merely incidental to his own observations. The situation thus presented is not to be confused with one where a medical expert is called upon to give his opinion as to the physical condition of a person whom he has seen rarely or not at all. While it would have been better in the instant case if the mother's history of Virginia's behavior had been submitted to the doctor's consideration by way of a hypothetical question, we nevertheless fail to see how the defendant could possibly have been prejudiced by the ruling in question, as the same or similar history was in evidence through other independent and unchallenged testimony. This exception is overruled.

We will now consider defendant's exception to the denial of its motion for a new trial under which it urges that the trial justice erred in not granting it an unconditional new trial. In anticipation of the question thus raised we have purposely set forth the conflicting evidence with particularity on the issue of liability in order to make it clear that the determination of such issue depended to a great extent on the credibility of the plaintiff's mother on the one hand and on defendant's only witness, William E. Franklin, on the other.

After fairly discussing the evidence as to liability the trial justice, who had the opportunity of observing those witnesses while testifying, used the following language in his rescript: "The testimony was disputed and the jury might properly find for the plaintiff on the mother's testimony, who made *a good witness*, while Franklin's memory, after six or seven years, during which time he was in the service of his country, had to be refreshed from the written

statement he had made at the time of the accident."
(italics ours) The independent judgment of the trial
justice upon the weight of the evidence and the credibility
of the witnesses was that the verdict on the issue of
liability was supported by the fair preponderance of the
evidence. Since it clearly appears that he did not mis-
conceive or overlook any material evidence with reference
to that issue, we find no reason under our well-settled rule
to disturb his decision denying defendant's motion for an
unconditional new trial.

Under this same exception the defendant further con-
tends that the damages though greatly reduced by the
trial justice are still excessive. The record in this case
presents a situation which would require us to resort to
speculation were we to question the judgment of the
trial justice in the matter of damages. In view of the
peculiar nature of plaintiff's injury, her constant treatment
by reputable doctors and specialists for a period of more
than six years, the uncertainty as to when she will com-
pletely recover from the effects of her injury, and the
absence of any contradicting medical evidence from the
defendant, we cannot say that the amount of the verdict
as reduced by the trial justice is still so excessive as to
require further reduction by us. The above observations
apply with equal force to the amount of the damages as
reduced by the trial justice in the case of Conrad Motte,
Virginia's father. The exception is therefore overruled.

All of the defendant's exceptions in each case are over-
ruled, and each case is remitted to the superior court for
entry of judgment on the verdict as reduced by the re-
mittitur.

*Fergus J. McOsker,* for plaintiffs.

*Boss & Conlan, Henry M. Boss, John Keenan,* for de-
fendant.