376 A.2d 1058.

AGOSTINHO BRIMBAU *vs.* AUSDALE EQUIPMENT RENTAL CORPORATION

JULY 28, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J.    This is a civil action to recover for personal injuries allegedly caused by the negligence of the defendant, Ausdale Equipment Rental Corporation (Ausdale). The case was tried to a Superior Court justice, sitting with a jury. The jury found for the plaintiff, Agostinho Brimbau, the amount of $370,550 and the defendant now appeals.

This case arose out of an accident which occurred on September 16, 1966. At that time, Brimbau was employed

as a laborer by the Marzano Construction Company, Inc. (Marzano Construction) at a construction site in the city of Warwick. Marzano Construction was there engaged in the installation of storm drains, and Brimbau was part of a pipelaying crew. The crew consisted of Rocco Marzano, who was the backhoe[1] operator, a backhoe oiler, and two laborers. While Rocco Marzano was operating the backhoe, a cable which supported the boom and bucket snapped, causing the boom and bucket to fall to the ground. Brimbau was struck by the machine and seriously injured.

One of the central issues in the case is the exact nature of Ausdale's involvement in the accident. Ausdale is a corporation which owned the backhoe in question. Rocco Marzano was the president and treasurer of Ausdale. It was undisputed that Ausdale had leased the backhoe to Marzano Construction several months before the accident. It was also undisputed that Rocco Marzano operated the backhoe while it was in Marzano Construction's possession and that he received an hourly wage from Marzano Construction. There was contradictory evidence as to who was responsible for maintenance of the machine.

Following the accident, Brimbau received payments under the Workmen's Compensation Act. G.L. 1956 (1968 Reenactment) chapters 35 and 37 of title 28. He also brought suit against Ausdale. One count of the complaint alleged negligence; the other count asserted liability on the basis of the "exclusive control" doctrine. The jury returned a general verdict for plaintiff. Ausdale appealed the verdict on the following grounds: that the trial justice erroneously denied the motion for a directed verdict; that the charge to the jury was incorrect; that certain evidentiary rulings were incorrect; and that its motion for a new trial was erroneously denied. For the reasons which follow we grant defendant's appeal and remand the case to Superior Court for a new trial.

---

[1] A backhoe is a tractor-like machine used primarily for digging trenches.

## I. The Motion for a Directed Verdict

We consider first the trial court's denial of defendant's motion for a directed verdict. The law is clear both as to the role of the trial justice in ruling on such a motion and as to our role in reviewing his decision:

> "[T]he trial justice must view all the evidence in a light most favorable to the adverse party and is obliged to give such party the benefit of all reasonable and legitimate inferences which may be properly drawn therefrom without sifting or weighing the evidence or exercising the justice's independent judgment as to the credibility of witnesses; and, if after taking such a view, he finds that there exists issues upon which reasonable persons might draw conflicting conclusions, he should deny the motion and the issues should be left to the jury to determine. When the Supreme Court reviews the trial justice's decision on a motion for a directed verdict, the court looks at the evidence in the same manner and fashion as the trial justice and is bound by the same rules which govern him." *Pimental v. D'Allaire*, 114 R.I. 153, 156, 330 A.2d 62, 64 (1975).

The first ground advanced by defendant in support of its motion was plaintiff's alleged failure to demonstrate the existence of a compensation repayment agreement. In this case, prior to bringing suit plaintiff received workmen's compensation payments from Marzano Construction's compensation carrier pursuant to chapter 33 of title 28, as allowed by §28-35-58.[2] The plaintiff also received compen-

---

[2]General Laws 1956 (1968 Reenactment) §28-35-58 provides as follows:

"Where the injury for which compensation is payable under chapters 29 to 38, inclusive, of this title, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under said chapters for such compensation, but shall not be entitled to receive both damages and compensation; and if the employee has been paid compensation under said chapters, the person by whom the compensation was paid

sation payments from the "second injury fund", pursuant to §28-37-4.[3] It is settled that one who is injured may not reap the benefits of a double recovery; that is, he cannot receive both workmen's compensation benefits *and* damages from the tortfeasor. Accordingly, one who has received workmen's compensation benefits may only sue a third party tortfeasor if he first agrees to repay those who paid him compensation. As we said in *Colarusso* v. *Mills*, 99 R.I. 409, 416, 208 A.2d 381, 385 (1965):

> "[A] prior recovery of compensation benefits by an injured worker will not prohibit suit against the wrongdoer if he can establish either that he has agreed with his employer to reimburse him out of any recovery or that his employer has refused to enter into any such agreement. In the latter event, however, any ultimate recovery should be reduced by the amount of the compensation benefits received."

At trial plaintiff attempted to meet this burden by introducing a written repayment agreement. It appeared on its face to be signed by plaintiff. A representative of the compensation carrier who paid the compensation to plaintiff produced this document and testified that it came from the files which the carrier kept in the ordinary course of business.

---

shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and to the extent of such indemnity shall be subrogated to the rights of the employee to recover damages therefor; provided, however, that when money has been recovered either by judgment or by settlement by such employee from the person so liable to pay damages as aforesaid, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party."

[3]General Laws 1956 (1968 Reenactment) §28-37-4 provides for additional compensation payments, payable out of the state treasury, in the event an employee suffers two compensable injuries.

20

The defendant argues that this agreement was deficient for several reasons. First, defendant asserts that the introduction of this agreement was erroneous because it lacked proper authentication. We cannot agree. It is true that a signed writing may not be introduced unless it is authenticated. But authentication need not necessarily be by way of direct testimony as to the authenticity of the signature: "[P]roof of any circumstance which will support a finding that the writing is genuine will suffice to authenticate the writing." McCormick, *Evidence* §222 at 548 (2d ed. 1972). Proof of private custody of a document is one well-accepted mode of circumstantial proof of its authenticity. 7 Wigmore, *Evidence* §2160 at 632 (3d ed. 1940); McCormick, *supra*, §224 at 552. *See United States* v. *Imperial Chem. Indus.*, 100 F.Supp. 504 (S.D.N.Y. 1951) (presence of unsigned memorandum in corporate files sufficient to authenticate it.).

In the case at bar, the testimony of the compensation carrier that the agreement was contained in plaintiff's file, which was kept in the ordinary course of business, provided a sufficient basis to support a finding that plaintiff's signature was genuine. In such circumstances, the likelihood of forgery seems remote. Accordingly, the trial justice did not err in admitting the document.

The defendant also argues that the purported agreement was in fact illusory, because plaintiff only agreed to reimburse the insurer "as provided by law" and there is no explicit provision in the statute requiring repayment. Again, we cannot agree. Neither the statute nor judicial interpretations thereof specify the exact form of agreement required. Here, plaintiff did agree to repay those who paid him compensation in the event that he recovered from the third party tortfeasor. This is all that is required. The statute does not require that the agreement be in writing, or that it be signed by the injured employee or by the insurer. The agreement need not be made at any specific time. As to the state-

ment that repayment would be "as provided by law," we find it quite understandable in view of §28-35-58 which provides for a pro-rata reduction of the required amount of repayment to allow for court costs, attorney's fees, and other out-of-pocket expenses incurred by the injured employee in his action against the third party tortfeasor.

The defendant next argues that, even assuming the facts were as stated by plaintiff, plaintiff's promise to repay was insufficient because the insurer did not specifically agree to it or, in the alternative, refuse to enter into such an agreement. It is true that a plaintiff must show such an agreement, or a refusal to agree, in order to maintain suit. This requirement is discussed at length in *Colarusso* v. *Mills, supra.* The reason for requiring such action on the part of the one who has paid compensation is to protect the third-party tortfeasor. This protection is necessary because the carrier who pays compensation is subrogated to that extent to the injured employee's right of action against the tortfeasor. Unless the carrier consented to be repaid by the injured employee out of any tort recovery, this right of subrogation would persist. A tortfeasor who paid the injured employee in full would still be subject to suit by the carrier, on the basis of its subrogated rights, to recover any compensation payments previously made to the employee. Thus, the question we face is whether the facts in this case demonstrate that the carrier manifested sufficient asset to the agreement in question to protect defendant from a possible double recovery.

The precise manner in which such an agreement is intended to prevent a double recovery from the tortfeasor is not clearly specified in the statute. *See generally Fireman's Fund Ins. Co.* v. *Lubash,* 95 R.I. 311, 186 A.2d 722 (1962). Whether the agreement is intended to function as a release by the insurer of its right of action against the tortfeasor, which the tortfeasor may rely on as a third-party beneficiary, or whether the agreement works an estoppel

against the insurer, or whether some other principle operates, is unclear. Thus it is difficult to state with precision the standard against which we must measure the sufficiency of the repayment agreement. However, we have little doubt that in this case the insurer's conduct would give rise to an estoppel should the insurer try at some later time to recover from defendant. We base this conclusion on *McArthur* v. *Dutee W. Flint Oil Co.*, R.I. 226, 232-33, 146 A. 484, 487 (1929), where we said:

> "After suit was commenced, the plaintiff's attorney, after discussing the matter with the insurer, the one who actually paid and is paying the compensation, sent to the insurer a letter confirming the oral agreement with the employer and embodying the understanding between the attorney and said insurer to the effect that, in the event damages were recovered, the plaintiff would reimburse the insurer for compensation paid. It thus appears that the insurer was satisfied to permit the plaintiff to recover full compensation. It is not suggested that either the employer or insurer is dissatisfied with arrangement made with the plaintiff. When the person who paid compensation has thus assisted in compelling the negligent third person to pay full damages, the person so paying is estopped to demand indemnity from such third person."

The facts are strikingly similar in this case. The plaintiff spoke to the insurer about repayment, and subsequently sent a letter stating the agreement to the insurer during the trial. The insurer placed the letter in its files and testified through an adjuster that "there is and has been an agreement between the compensation carrier and the plaintiff that in the event of his recovery against any third-party that he would reimburse the compensation carrier * * *." The insurer gave no indication that it objected to this arrangement.

Accordingly, since the conduct of the insurer created an estoppel which was sufficient to protect defendant from a double recovery, we conclude that that conduct satisfied the requirement of an "agreement" on the part of the insurer.

The defendant's final contention with respect to the agreement to repay is that it was inadequate because it was not submitted to the state or the Department of Labor with regard to payments made from the second injury fund. However, the written agreement executed by plaintiff extends not merely to the compensation carrier, but to "any person who has paid me compensation under the provisions of the Rhode Island Workmen's Compensation Act." This language is broad enough to include payment made by the state from the second injury fund.[4]

We conclude that, since the jury could reasonably have found that an agreement to repay existed, and since that agreement was not as a matter of law inadequate, the trial justice was correct in denying defendant's motion for a directed verdict on this ground.

The second ground advanced by defendant in support of its motion for a directed verdict was that there was insufficient evidence to support a verdict for plaintiff. We will consider this claim as it relates to each of the two counts contained in the complaint.

One count alleged liability on the basis of negligence which could be inferred from "exclusive control" of the backhoe by defendant. To survive a directed verdict on this count, plaintiff was required, in accord with *Pimental* v. *D'Allaire, supra,* to introduce evidence from which a jury could reasonably conclude both that the accident in question would not ordinarily occur after due precautions were taken, and that the cause or instrumentality of the accident

---

[4]Since the second injury fund is administered by the state, not a private compensation carrier, we are not inclined to insist on an explicit agreement or refusal to agree on its part, so long as the injured employee has agreed to repay second injury fund benefits.

was entirely within the control of defendant. *Motte* v. *First Nat'l Stores,* 76 R.I. 349, 70 A.2d 822 (1950). *See Cinq-Mars* v. *Kelley,* 95 R.I. 515, 188 A.2d 379 (1963).

As to the first factor mentioned above, plaintiff showed that the accident in this case resulted from the parting of a cable on a commonly used piece of construction equipment. In *Cinq-Mars* v. *Kelley, supra* at 523, 188 A.2d at 384, the snapping of a cable on a crane was held to be the kind of accident which normally would not occur in the absence of negligence. We think this case fits well within the rationale of *Cinq-Mars.*

As to the second factor, exclusive control, the question is much closer. A review of the record shows that there was ample testimony that Marzano Construction, not defendant, was responsible for the maintenance of the backhoe. However, John Marzano, president of Marzano Construction, admitted on cross-examination that he had previously stated that Rocco Marzano, who was an officer of defendant corporation, was entirely responsible for the operation and upkeep of the backhoe, and that had Marzano Construction performed any maintenance on it, Rocco Marzano would have been obligated to reimburse Marzano Construction. Keeping in mind the standard of review set out in *Pimental* v. *D'Allaire, supra,* and the jury's right to assess credibility, we cannot say that a reasonable person could not conclude from this conflicting testimony that defendant had exclusive control of the backhoe at the time of the accident. Accordingly, the trial justice did not err in denying defendant's motion for a directed verdict as to the count alleging negligence on the basis of exclusive control.

As to the other count, alleging simple negligence, the defendant argues that there was no evidence whatsoever of negligence on its part. The thrust of plaintiff's case was that defendant was negligent in not detecting and in continuing to use a worn cable on the backhoe. The plaintiff relied on the testimony of three witnesses to establish the existence of

a worn cable. Edward Hoppin, an insurance investigator not claimed to be an expert concerning backhoes, testified that when he saw the cable it looked "quite worn * * * at many places." Kenneth Mairs, a professor of metallurgy at the University of Rhode Island, stated that he saw "distinct signs of surface wear" on the cable. Neither of the above witnesses gave an opinion as to whether the cable was so worn as to be dangerous. Kendall Moultrop, an associate professor of civil engineering at the University of Rhode Island, who admitted he was not an expert in backhoes, performed tensile strength tests on the cable, as well as other tests, and noted "considerable wear." It was his opinion that the cable strength was not adequate for the job it was intended to perform. In our view, the evidence of negligence was extremely thin, especially with regard to evidence relating the actual wear on the cable to the degree of wear which would be expected from normal operations and that which would be regarded as excessive or dangerous. However, again keeping in mind our obligation to view all of the evidence in the light most favorable to the party against whom the directed verdict is sought, in this case plaintiff, we cannot say that the case should have been taken from the jury. Accordingly, the trial justice was correct in denying defendant's motion for a directed verdict on the negligence count.

## II. The Charge to the Jury

The defendant objected to the following portion of the jury instructions:

> "I should also tell you, since I am talking of the corporate defendant here being the Ausdale Equipment Rental Corporation, that a corporation is to be considered by you just as if it were a live person defendant. You do not look at a corporation other than as you do an ordinary person. A corporation is just like a person. The defendant here, as I have told you, is a corporation. A corporation can only act through its agents and

its officers and it's responsible for the action of its agents and its officers. *In this case Rocco Marzano, who was the president and treasurer of the defendant corporation, would be its agent. At the time of the incident in this case, he was acting within the scope of his authority as the agent of the defendant corporation.* So, just to recap again, so that you don't confuse anything here, the defendant in this case is the corporation Ausdale Equipment Rental Corporation which is not Rocco Marzano, and it's not Mrs. Marzano." (emphasis added)

The defendant argues that the status of Rocco Marzano as its agent was an issue of fact for the jury to decide. We agree.

It is axiomatic that a corporation is liable only for those torts committed by agents acting within the scope of their authority or in the course of their employment. *Becker* v. *Beaudoin,* 106 R.I. 562, 568, 261 A.2d 896, 900 (1970). One treatise states:

> "As a general rule, however, a corporation is no more liable than a natural person would be for torts not within the scope of the authority of its officers, agents or servants and committed by them outside of the course of their employment, unless it has expressly authorized or has ratified the same; and it can make no difference whether the officer, agent or servant undertakes to act for the corporation in a matter which is beyond his authority, or acts for himself." 10 Fletcher, *Cyclopedia Private Corporations* §4877 at 267 (Perm. ed. 1970).

*See generally Dennehy* v. *Maycourt Realty Co.,* 90 R.I. 245, 157 A.2d 659 (1960); *Carpenter v. Blackstone Fin., Inc.,* 84 R.I. 187, 122 A.2d 165 (1956). Moreover, the burden of proving such authority or employment is on the one who sues a corporation. 9 Fletcher, *Cyclopedia Private Corporations* §4577 at 560 (Perm. ed. 1976). And the ques-

tion of whether the act complained of was committed within the scope of the agent's employment is one of fact to be determined by the jury. 10 Fletcher, *supra* §4905 at 368.

In the case at bar, Eleanor Marzano, who was called by defendant, testified that defendant corporation owned one piece of equipment, the backhoe in question. There was evidence that her husband, Rocco Marzano, was the president and treasurer of defendant. There is no testimony as to who the stockholders of the corporation were, what the usual activities of the corporation were, what the stated purpose of the corporation was, whether the corporation had assets of any other kind, or whether it had any other employees. There was no testimony as to what Rocco Marzano's usual corporate duties were, or whether he often operated the backhoe rented to Marzano Construction, or indeed whether he had ever operated it before September 1966. There was no testimony as to whether the corporation's interests were furthered by Rocco Marzano's operation of the backhoe, or whether the corporation derived any direct or indirect benefits therefrom. In short, there was virtually no evidence as to whether Rocco Marzano was acting within the scope of his authority.[5] There was, to the contrary, testimony that defendant rented the backhoe "bare" to Marzano Construction, and that Rocco Marzano operated it under a separate agreement as an *employee* of Marzano Construction, not as an agent or employee of defendant.

The testimony of John Marzano, referred to previously, and the fact that Rocco was an officer of defendant and that defendant owned the backhoe, constituted the only

---

[5]The plaintiff admits as much in his brief, but apparently takes the position that no evidence was necessary. He states that:

> "There was no evidence whatsoever as to the scope or limits of Rocco Marzano's duties as an executive officer of the defendant-corporation. In the absence of evidence to the contrary, there was but one conclusion to be drawn; namely, that Rocco Marzano was within the scope of his authority."

evidence from which the jury could have inferred that Rocco was acting as an agent of defendant.

It seems quite obvious to us that the facts were not so well-settled as to warrant an instruction that Rocco was an agent of defendant acting within the scope of his authority at the time of the accident. His agency was a disputed question of fact. The jury should have been instructed in the appropriate law of agency and should have been allowed to decide the question for itself. The trial justice's failure to so instruct the jury was error.

We do not believe that this error was harmless. The defendant could only be liable in negligence if it should have had knowledge of the defective cable and had the ability and duty to correct it. Whether such knowledge, duty and ability existed, depended in turn, on whether Rocco was an agent of the corporation. If he was not acting on behalf of the corporation but was merely an employee of Marzano Construction, his actions would of course, not affect defendant in the least.[6] As to the count alleging "exclusive control," similar considerations apply.

By instructing the jury that at the time of the accident Rocco was acting within the scope of his authority as an agent of defendant corporation, this whole area of inquiry was foreclosed. Furthermore, it could have led the jury to conclude that since defendant's agent was operating the machine, defendant must have been responsible for it. We think this clearly resulted in a situation where the jury " 'could have been misled' to the resultant prejudice of the complaining party." *Anter* v. *Ambeault,* 104 R.I. 496, 501, 245 A.2d 137, 139 (1968). Accordingly, we find the charge

---

[6]This can easily be seen in a more extreme example. If, for instance, Marzano Construction had gone to a local rent-a-car business and rented a car or other piece of equipment, and independently, hired an employee or officer of the rent-a-car business to operate the rented vehicle, the business would obviously not be liable for the operator's negligence in the absence of specific facts showing that the employee was still acting as its agent.

to the jury to be reversible error, which can only be corrected by a new trial.

In view of our disposition of the case, we find it unnecessary to consider the defendant's other allegations of error.

The defendant's appeal is sustained and the case is remanded to the Superior Court for a new trial.

*Raymond A. LaFazia, Patricia Ryan Recupero, Joseph A. Kelly,* for plaintiff.

*Kenneth P. Borden, Higgins, Cavanagh & Cooney,* for defendant.