Ronnie FLEMING and Brenda FLEMING
*v.* WAL-MART, INC.

CA 79-117                              595 S.W. 2d 241
Court of Appeals of Arkansas
Opinion delivered February 6, 1980
Rehearing Denied March 12, 1980
Released for publication March 12, 1980

*McMath, Leatherman & Woods,* by: *James B. McMath,* for appellants.

*Barber, McCaskill, Amsler, Jones & Hale,* for appellee.

JAMES H. PILKINTON, Judge. On January 24, 1976, Mrs. Brenda Fleming of Alexander, Arkansas, was injured in the vestibule area of the Wal-Mart store located at Geyer Springs and Baseline Road in Little Rock. Mrs. Fleming and her husband, Roland Fleming, filed this suit seeking damages against Wal-Mart Stores, Inc., alleging negligence on the part of the store. Among other things, plaintiffs claim that the doctrine of res ipsa loquitur applied to this case. At the close of plaintiffs' testimony, Wal-Mart moved for a direct ver-

dict which was granted by the trial court. The Flemings have appealed.

This particular store was constructed with a large vestibule, enclosed with glass, with a pair of doors located in the north and south ends. Along the west wall, which was the outside wall of the vestibule, Wal-Mart displayed various types of merchandise. On the east or inside wall, at one end of the vestibule, Wal-Mart had placed four pinball machines.

When Brenda Fleming entered the store to do some shopping, her husband waited for her in the vestibule area where he played the southernmost pinball machine. Across the vestibule to Mr. Fleming's left there was a display of metal utility cabinets. These cabinets were of various sizes. The height of them varied from 63 inches to 66 inches. The display of these cabinets commenced somewhere near the north set of doors and ran along the outside, or west, wall of the vestibule to a point somewhere just behind, or south of, the place where Mr. Fleming was playing the pinball machine. There is a dispute as to whether these cabinets were displayed more than one deep, as Mr. Fleming testified, or were in single file as the store manager claimed. It is agreed by all, however, that the cabinets had been placed by Wal-Mart up off the floor on top of some type of platform or riser. The exact nature of the platform is in dispute.

While Mr. Fleming was playing the pinball machine, there was only one other person in the vestibule until Mrs. Fleming returned. This other customer was looking at the cabinets. He had started looking at the cabinets near the south end of the display, and had apparently worked his way towards the north end of the display by the time Mrs. Brenda Fleming returned to the vestibule.

Mrs. Fleming completed her shopping, came out of the main portion of the store, and was standing beside the pinball machine waiting for her husband to complete his game. The cabinet directly behind her toppled over, fell across the aisle, and struck her in the middle of the back. The blow caused Mrs. Fleming to fall to her knees pinning her body against the machine. Mr. Fleming attempted to lift the cabinet off of

his wife but was unsuccessful. He testified that the cabinet was flimsy and twisted when he tried to lift it. The unidentified man, who had been looking at the cabinets, was the only other person in the vestibule at the time the cabinet fell. He came from the north end of the display to the south end and assisted Ronnie Fleming in lifting the cabinet off of Brenda Fleming. They replaced the cabinet on its display stand. Mrs. Fleming was shaken up but did not think at that time she was badly hurt. Ms. Linda Jo Herndon, the checkout supervisor, and Mr. Darrell Lanford, the assistant store manager, heard the noise and came out into the vestibule and talked briefly to the Flemings. Mr. and Mrs. Fleming then left the store and went home. Mrs. Fleming had trouble with her back all that night. The next day, because of continuing problems, the Flemings decided that Brenda should seek medical attention. They returned to Wal-Mart first to inform someone in authority there that Mrs. Fleming was going to the hospital, and to notify Wal-Mart that they would expect the store to pay the medical bills. After leaving the Wal-Mart store on this occasion, Mrs. Brenda Fleming went to the hospital emergency room.

All parties seem to agree that Mrs. Fleming was an invitee on the Wal-Mart premises. As such, appellee owed her a duty to exercise ordinary care to maintain its premises in a reasonably safe condition. See *Industrial Park Businessmen's Club* v. *Buck,* 252 Ark. 513, 479 S.W. 2d 842 (1972).

The plaintiff was struck by a relatively large piece of merchandise which fell from one of the appellee's displays. The ultimate question then is whether Wal-Mart had exercised ordinary care in the construction and maintenance of this particular display. What constitutes ordinary care is dependent upon the relevant circumstances. See AMI 303.

The parties also seem to agree on most of the other legal principles involved in a case of this type. Certainly one of the factors to be considered in establishing and maintaining a display in a department store is that the merchandise is going to be inspected by the customers. A merchandise display constructed so that an inspection by a customer, in a foreseeable and reasonable manner, causes the merchandise to fall, is a

negligently constructed display. On the other hand, a store owner is not an insurer of its customers' safety. Certainly where a display is caused to fall, and a customer is injured by an independent act of negligence which the merchant cannot reasonably be expected to foresee or guard against, the merchant is not liable. However, ordinary and foreseeable activities of patrons, not amounting to independent acts of negligence, should not result in injury to fellow patrons or themselves; and a merchant is negligent if he has so arranged his merchandise that such activities can cause merchandise to fall resulting in injury.

This fundamental concept of a merchant's duty has been recognized in a number of jurisdictions. *Francois v. American Stores Co.,* 46 N.J. Super. 394, 134 A. 2d 799 (1957); *Winn-Dixie Stores, Inc.* v. *Fredericks,* 106 Ga. App. 732, 128 S.E. 2d 542 (1962); *Sparks* v. *Allen Northridge Market,* 176 Cal. App. 2d 694, 1 Cal. Rptr. 595 (1959); *Baily* v. *American Stores Co.,* 71 Pa. D. & C. 613 (1950); *Jepson* v. *Country Club Market,* 279 Minn. 28, 155 N.W. 2d 279 (1967). It has even been held that actual disarrangement of displays, where this is a foreseeable result of ordinary customer inspection, should be taken into consideration; and that the merchant is liable where he constructs a display which does not take this into consideration. *Francois* v. *American Co., supra.* Also see *Jepson* v. *Country Club Market, supra.*

## I.

Appellants first argue that the trial court erred in directing a verdict for appellee. They claim there was substantial evidence introduced by them upon which the jury could have based a finding that Wal-Mart was negligent in the establishment and maintenance of its display, and that said negligence caused the injuries and damage suffered by appellants. We agree with appellants that there is a factual basis in this record for a jury determination of liability on the part of Wal-Mart.

In regards to when a trial court may direct a verdict, the rule stated in *Smith* v. *McEachin,* 186 Ark. 1132, 57 S.W. 2d 1043 (1933), applies here:

. . . where there is any substantial evidence to support the verdict, the question must be submitted to the jury. In testing whether or not there is any substantial evidence in a given case, the evidence *and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed,* and, if there is *any* conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair minded men *might* draw different conclusions therefrom it is in error to direct a verdict. (Emphasis supplied)

It is undisputed that a very flimsy metal cabinet, weighing 60 to 80 pounds, which was on display in the vestibule area of the Wal-Mart store, fell across the aisle and struck appellant Brenda Fleming in the back. The evidence discloses that the cabinet was one of three sizes, the dimensions of which were (1) 24 inches wide by 12 inches deep by 63 inches high, (2) 30 inches wide by 19 inches deep by 63 inches high, and (3) 36 inches wide by 21 inches deep by 66 inches high. The jury could have concluded on this record that the object which struck Mrs. Brenda Fleming, was not a stable item by its very nature. The cabinets were relatively tall in relation to the size of their base. In addition, there were the results of the experiment conducted by Mr. Joe Willbanks, an employee of Wal-Mart, which are in evidence. On the day after the accident, and while the cabinets were still displayed as they were the night before, Willbanks pushed one of the cabinets. It rocked back and forth and fell into his hands.

It is not disputed that these cabinets were stacked up off the floor on some type of riser or pallet. The Wal-Mart manager, Mr. Darrell Lanford, testified that the cabinets were displayed on a 24 inch wide solid base platform. Mr. Ron Fleming testified that there were 16 to 24 of these cabinets displayed on slatted pallets, similar to one of the appellants' exhibits; and that the cabinets were stacked on the pallets two or three deep. The jury could have concluded that it  would be hazardous to display these cabinets on either of the two types of risers described. The jury could have concluded that it was hazardous to display the cabinets off of the floor on the narrow display base described by Mr. Lanford. If

they were stacked two or three deep, as Mr. Fleming testified, simple arithmetic shows they would almost certainly be overhanging even when perfectly placed on the riser. So situated, the likelihood that one would topple over, even if slightly examined by a customer, or even if a door was left open, would present a hazard. Of course. if the cabinets were displayed on pallets, two or three deep, as Mr. Fleming said, a greater hazard might have occurred. The slats in the pallets had a gap of 1 ½ to 2 inches between the boards. These ran parallel with the cabinets. If a cabinet was situated on one of these pallets in such a way that its front end was hanging over one of these gaps (and possibly its back side too), it would be tantamount to hanging over the edge of the display base. Its tendency to topple would be similarly enhanced. Ms. Herndon testified that these pallets were used at times as display bases in the vestibule. The generally agreed area in which the cabinets were displayed, and the number of the cabinets shown by the evidence, would indicate they were stacked two or three deep. There would not have been enough space for a display of that many cabinets single file.

A careful examination of the evidence persuades us that the jury could have found these cabinets unstable, and potentially dangerous due to their size and weight, if displayed off the floor on elevated risers; that they were displayed in a manner which enhanced their instability; or that the type of display made it likely the cabinets would become unstable as a result of foreseeable and ordinary customer inspection. It is undisputed that they were displayed in a high traffic area of appellee's entry vestibule.

In the circumstances, we hold that there was sufficient evidence in this record to justify the court in over-ruling appellee's motion for a directed verdict; and that the trial court was in error in directing a verdict for appellee. The case must therefore be reversed for a new trial.

## II.

The appellants also claim that the trial court erred in holding that a statement of a certain Wal-Mart employee regarding the instability of the display was inadmissible un-

der the Uniform Rules of Evidence; and that the court incorrectly excluded it. We will discuss this point because the same question is likely to arise on retrial.

Wal-Mart made a Motion in Limine requesting that Ron Fleming not be permitted to testify concerning the statement made to him the night following the occurrence by Mr. Joe Willbanks, a Wal-Mart employee. The court granted the Motion in Limine, suppressing the testimony. In support of the trial court's action, appellee argues that appellants failed to introduce evidence that the alleged statement of Mr. Willbanks was made in or about a matter over which he had actual or apparent authority.

The record shows that Ronnie Fleming testified at the hearing to the following:

A. We went back the next night to tell the people at the store that Brenda — her back was hurt; it was bruised, and we were fixing to take her to the emergency room to have the doctor look at it . . .

. . . And we went in to the service desk; told the lady there what had happened about Brenda and that we needed to talk to the manager of the store.

Q. Now this is the lady sitting behind the service desk?

A. Yes. And so were there a couple of minutes and finally a man came up.— they said he was the one to talk to.

Mr. Lovell: Of course, we object to all this hearsay . . .

A. (Witness continuing:) The woman called the man up there. He had gotten a medical report and taken us to the back room . . . and filled out the forms.

Q. All right then, what kind of forms, what kind of questions did he ask you?

A. He asked how old we were, name and address, where we were living, how long we had lived there; asked how

the accident happened; and what was hurt; where it hit her; and how she was doing at this time and told us to go ahead and take her to the hospital.

. . .

Q. All right, now then, what else did he do?

A. We left there — he and I left and went to the front of the store and the cabinets were still standing in the same position as the night before. He took his hand and pushed it forward, it came all the way over and he caught it with both his hands and said they should not have been stacked like that and said they was top-heavy and it was unsafe.

On cross-examination Mr. Fleming said: "We thought he was the manager of the store". Appellants later learned that the person to whom they talked was Joe Willbanks, the in-house security guard. Wal-Mart had coverage, regardless of liability, and some of the medical bills were paid based on the information Mr. Willbanks obtained.

Appellants claim this statement by Mr. Willbanks was admissible under the Uniform Rules of Evidence, 801(d)(2)(iv), the pertinent part of which reads as follows:

. . . A statement is not hearsay if: . . . the statement is offered against a party and is . . . a statement by his agent or servant concerning a matter within the scope of his agency of employment, made during the existence of the relationship. . .

Although appellee says that Mr. Willbanks, as a security guard, was not authorized to investigate accidents, the facts are that he did investigate this particular occurrence. Under the circumstances here, Mr. Willbanks made the statement about a matter over which he had *apparent* authority. At least in this particular incidence, if not generally, Mr. Willbanks had the authority to investigate this claim. A principal can be bound by the apparent authority of its agent, and can ratify

an agent's unauthorized actions. *Lakeside Bridge and Steel Co. v. DeVall,* 179 Ark. 963, 19 S.W. 2d 1107 (1929). We are persuaded that Mr. Willbanks, the Wal-Mart in-house security person, at least on this occasion did have authority to investigate this occurrence. His action in so doing was ratified by the appellee. Wal-Mart subsequently made payments, through its insurance carrier, for medical bills. No one else attempted to make an investigation of this occurrence. Appellee acted solely on what Mr. Willbanks did on behalf of the firm. Under the circumstances, the statements made by Mr. Willbanks concerning that investigation are admissible under Rule 801(d)(2)(iv) of the Uniform Rules of Evidence.

## III.

Appellants contend that the trial court erred in holding that the doctrine of res ipsa loquitur did not apply to this case.

The doctrine of res ipsa loquitur has its origins in a case which involved the unexplained falling of an object. See *Byrne v. Boadle,* 2 Hurlst & C 722, 159 Eng. Reprint 299, 3 New Reports 162 (1863). Numerous jurisdictions have since recognized the applicability of the doctrine in cases involving falling merchandise in the contemporary department store. *Munzert* v. *American Stores Co.,* 232 Md. 97, 192 A. 2d 59 (1963); *Chapman* v. *Redwine,* 149 Colo. 515, 370 P. 2d 147 (1962); *Copher* v. *Barbee,* Mo. App., 361 S.W. 2d 137 (1962); *Perito* v. *Sunrise Supermarket Corp.,* 33 Misc. 2d 627, 229 N.Y.S. 2d 667 (1961); *Motte* v. *First National Stores, Inc.,* 76 R.I. 349, 70 A. 2d 822, 20 ALR 2d 88 (1950); *Winn-Dixie Stores, Inc.* v. *Fredericks, supra.* See also 38 ALR 3d 363.

There seems to be little disagreement between the parties as to the law on this point. However, they do disagree as to whether res ipsa loquitur should apply in this case. Appellee correctly points out that the mere happening of an accident does not justify recourse to the res ipsa loquitur doctrine in a personal injury suit. Appellee also is correct in saying that the basic components of the doctrine of res ipsa loquitur include *exclusive* control by the defendant. See AMI 610. Mr. Fleming testified that there was an unidentified

customer looking at the cabinets before one of them fell. Fleming said that he heard this unidentified man opening and shutting some of the doors to the cabinets. Appellee claims that the doctrine of res ipsa loquitur cannot be properly applied here because of appellant Fleming's testimony that this unidentified customer was handling the merchandise. Therefore, appellee argues the instrumentality (cabinet) which produced the injury complained of was not, at the time of the injury, under the exclusive control of Wal-Mart or its agents or servants. Appellee contends that the evidence presents a clear possibility of an intervening cause. We do not agree. Wal-Mart owed the appellants the duty to exercise ordinary care to maintain its display in a reasonably safe manner and condition; and the opening and closing of the doors on cabinets of this type is a foreseeable result of customer inspection. *Winn Dixie Stores, Inc.* v. *Fredricks, supra.* The issue here is whether the actions of the unidentified customer, looking at the cabinets, would operate to destroy the appellee's exclusive control. We hold that it did not, and the trial court's ruling was in error. The testimony in the record given by both appellants concerning the activities of the unidentified person in question is quite detailed and simply described this man as doing exactly what one would expect an interested customer to do relative to the inspection of the cabinets so displayed. There is no evidence in the record that shows any mishandling of the merchandise, or rearranging of the display in any way, by this customer. At most, this was an unexplained toppling of a merchandise display as a result of ordinary and foreseeable customer handling. What this record shows certainly did not constitute customer abuse.

The evidence also shows that the unidentified man was at the far north end of the display at the time this one cabinet fell at the south end of the display. He had done nothing except look at the cabinets and open and shut some of the doors. Such an inspection of displayed merchandise by a customer or potential buyer was an ordinary, customary and foreseeable aspect of Wal-Mart's operation. Wal-Mart was charged with the responsibility of taking this into consideration in establishing and maintaining this display.

Absent some evidence of customer abuse or some other unforeseeable or uncontrollable event, which would explain the occurrence in question without negligence on the part of the defendant, it is only logical to conclude that the cabinet fell as the result of the negligence of Wal-Mart, and the doctrine of res ipsa loquitur is applicable. The burden of going forward with the evidence was thus shifted to the defendant at the close of plaintiffs' case, and the verdict should not have been directed.

Reversed and remanded.