Janice ACHILLE

v.

COLONIAL PENN
INSURANCE COMPANY.

No. 83–323–Appeal.

Supreme Court of Rhode Island.

March 14, 1986.

Lauren E. Jones, Providence, for plaintiff.

John J. Finan, Pawtucket, for defendant.

### OPINION

KELLEHER, Justice.

The plaintiff in this Superior Court civil action is before us on an appeal from a trial justice's grant of the defendant's motion for a directed verdict that was made at the conclusion of the presentation of the plaintiff's evidence. Her suit is based upon the uninsured-motorist provisions of an automobile liability policy issued by the defendant to the plaintiff's husband. Hereafter we shall refer to the plaintiff as "Janice" and the defendant as "the insurer" or "Colonial Penn."

The incident precipitating this litigation occurred in Cranston during the early evening hours of September 28, 1977, in the parking lot of a Burger King restaurant. When Janice arrived at the parking lot, she had as passengers her teenaged daughter and two of the daughter's girl friends. The quartet spent the time in the parking lot enjoying a take-out snack. The snacking took place in a 1975 Buick Century sedan that was registered in the name of Janice's husband. As Janice was about to leave the Buick and deposit the remnants of the repast in a nearby container, the Buick was struck by a 1969 Camaro.

At the trial the Camaro's driver, Lucy Carland, acknowledged that she had backed into the Buick. She also told the jury that the Camaro was registered in the name of her husband, Arthur. During direct examination, Mrs. Carland testified that to the best of her knowledge the Camaro was not insured. Later, in cross-examination, when she was asked if at the time of the parking-lot collision she had told Janice that she was insured, Mrs. Carland responded, "I thought that I was but it had run out."

When Janice was testifying, her trial counsel attempted to introduce into evidence a form entitled "Declaration Sheet" that she had received in the mail from Colonial Penn. The trial justice refused to allow the sheet to be introduced into evidence because it had not been properly authenticated. Shortly thereafter Janice's attorney announced, "Plaintiff rests."

In granting the insurer's motion for a directed verdict, the trial justice explained his action by commenting, "[T]he plaintiff has failed to prove that she is an insured under an uninsured motorist provision applying to this particular incident." Earlier, the trial justice had told plaintiff's counsel, "[Y]ou have to prove both—that not only the car is uninsured but the driver is uninsured, and you haven't done that * * * in this case."

▆▆▆ In its consideration of a grant of a directed verdict, this court is required, as was the trial justice, to forego any consideration of the weight of the evidence or credibility of the witnesses but view the evidence in the light most favorable to plaintiff to determine if there was any competent, credible evidence that would support Janice's claim against Colonial Penn. If there was such evidence, then the motion for a directed verdict should have been denied and the controversy submitted to

the jury. *Thomas v. Amway Corp.*, 488 A.2d 716, 718 (R.I.1985).

■ Initially, we turn our attention to the "Declaration Sheet" and the principles involved in determining its authenticity or lack thereof. The question of authenticity was considered in *Brimbau v. Ausdale Equipment Rental Corp.*, 119 R.I. 14, 20, 376 A.2d 1058, 1061 (1977), where it was stressed that there was no need for direct testimony to establish a document's authenticity—that proof of any circumstances that would support a finding that the writing is genuine would suffice to authenticate the writing. It was also pointed out that proof of proper custody of the document is one accepted mode of circumstantial proof of the document's authenticity.

Applying the *Brimbau* principles to Janice's "Declaration Sheet," we note that no one disputes the fact that the insurance declaration cover sheet was in Janice's possession and that she had received it through the mail. The document by its terms applies to the 1975 Buick Century. The document is drafted on one of Colonial Penn's insurance forms and also contains the insurer's trademark. The likelihood that someone could have forged this document is quite remote. Accordingly, the document was self-authenticating and should have been allowed into evidence.

■ An examination of the so-called Declaration Sheet clearly indicates that it was issued to reflect a change in coverage that in turn caused a reduction in the premium. A notation on the sheet reveals that the Achilles had been a two-car family and, for some reason not disclosed, had decided to insure the second vehicle no longer. This decision also resulted in the premium reduction. However, it is clear from the sheet that the 1975 Buick Century remained insured, and it is also clear that the amended policy was in effect from August 28, 1977, to May 16, 1978. Thus, the Buick was insured by Colonial Penn on September 28, 1977, the day on which Janice and Mrs. Carland exchanged licenses and registrations.

Janice has consistently maintained that she was never placed on notice that the insurer intended to deny existence of its policy. Professor Kent has observed that the function of a pleading " 'is to give fair notice of the claims and defenses of the parties.' " 1 Kent, *R.I.Civ.Prac.* § 8.1 at 81 (1969). We expressed similar sentiments in *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 227 A.2d 582 (1967). An examination of the insurer's amended answer and affirmative defenses discloses an implicit admission that there was an insurance policy,[1] with the only question being whether Janice had complied with the conditions and requirements of the particular contract. Thus one can infer from the pleadings, the evidence, and the "Declaration Sheet" that (1) Colonial Penn had issued an automobile liability policy to Arthur that insured not only Arthur but Janice as his wife and as a resident of the Achille household and (2) the policy was in effect at the time the Camaro collided with the Buick Century.

■ In considering the uninsured status of Mrs. Carland, her spouse, and the 1969 Camaro, we need only refer to Mrs. Carland's testimony. As noted earlier, she testified that on the evening in question she was driving a motor vehicle, an uninsured vehicle, that was registered to her husband. Later, in cross-examination, she explained to the jury that she had told Janice that she was insured when in fact the policy had expired.

The record indicates that at the time of the collision the Carlands lived in North Kingstown. However, on September 28, 1977, Mr. Carland was a patient in St. Joseph Hospital, where he was being treat-

---

1. In answering Janice's amended complaint, the insurer denied that Janice was a named insured under the policy but did not dispute the fact that the Buick was covered by its policy. In setting forth its affirmative defenses, Colonial Penn faulted Janice for her alleged failure to comply with the notice provisions of the policy.

ed for a stroke. At the time of the trial the Carlands had been operating the 1969 Camaro for six years. The record is devoid of any evidence that would support a reasonable inference that the Carlands were a two-car family. Rather, a reasonable inference can be drawn from Mrs. Carland's testimony that the Carlands were in fact a one-car family. Since they had but one car at their disposal, one could with good reason infer that Mrs. Carland, her spouse, and the 1969 Camaro were all uninsured when Mrs. Carland "ran into" Janice at Burger King's parking lot.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a new trial.